**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelly Worden, | No. CV-22-00544-PHX-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Shelly Worden filed a Complaint (doc. 1) seeking review of the denial of her Application for Social Security Insurance Benefits ("SSI") under Title II of the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("SSA"). The Court has reviewed Plaintiff's Opening Brief (doc. 18), Defendant Social Security Administration Commissioner's Answering Brief (doc. 19), and the administrative record ("AR").

The Court finds the administrative law judge ("ALJ") committed reversable error in rejecting Plaintiff's symptom testimony in the absence of specific, clear, convincing reasons. Accordingly, the Court remands this matter for further proceedings consistent with this Order.

**I.      BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on April 9, 2019, alleging disability as of March 1, 2018. AR 67-68. The SSA denied her application at the initial and reconsideration levels of administrative review. AR 103, 112. Plaintiff requested

a hearing before an ALJ. AR 117-18. On October 28, 2020, a telephonic hearing was held. AR 31-64. In a written decision dated February 10, 2021, the ALJ found Plaintiff was not disabled. AR 13-25. The Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. AR 1.

## II. THE SEQUENTIAL EVALUATION PROCESS

In determining whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof; at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If not, at step four the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled and the inquiry ends. *Id*. If not, at step five the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled. *Id.*

The ALJ found that Plaintiff had severe impairments of systemic lupus erythematosus (SLE), fibromyalgia (FM), osteoarthritis (OA), chronic obstructive pulmonary disease (COPD), and obesity. AR 16. However, the ALJ found as non-severe Plaintiff's hypertension, hypothyroidism, hyperlipidemia, Vitamin D deficiency, deficiency of other specified B group vitamins, and Sjogren's syndrome because these

conditions were "controlled by compliant use of medication and ongoing medical management." AR 16. The ALJ found Plaintiff's depression and panic disorder to be non-severe as they caused no more than "minimal limitation in [Plaintiff's] ability to perform basic mental work activities." AR 16. The ALJ determined Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b):

> [C]laimaint can lift and carry 25 pounds occasionally and 20 pounds frequently. She can stand and walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. The claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and occasionally climb ladders or scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants.

AR 18. Based on the above and testimony from a neutral vocational expert ("VE"), the ALJ found Plaintiff could perform her past relevant work as a post office or distribution clerk and was therefore not disabled. AR 24.

### III. LEGAL STANDARD

The Court reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV. DISCUSSION

Plaintiff asserts (1) the ALJ erred in his evaluation of medical opinion evidence and (2) the ALJ's RFC determination is not supported by substantial evidence. Doc. 18 at 1.

The Court addresses each of these issues in turn.

### A. The ALJ Did Not Err In His Evaluation Of Medical Opinions

Under the former SSA regulatory scheme, ALJs gave a treating physician's opinion "'substantial weight' and could only reject such opinion by providing 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise." *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). In 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Filed in 2019, Plaintiff's case is governed by the new regulations. AR 68.

Accordingly, the ALJ was not required to adhere to a hierarchy of medical opinions but rather to articulate the persuasiveness of medical opinions using factors set forth in the regulations. 20 C.F.R. § 404.1520c. Supportability and consistency are the most important factors but ALJs may also consider the nature of the treatment relationship, the medical source's specialization, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(a)-(c). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(c)(1)). In contrast, "[c]onsistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Dr. Hendricks examined Plaintiff on October 8, 2020. AR 646. In her residual functional capacity report, Dr. Hendricks noted that she reviewed Plaintiff's treatment records from G&K Medical Associates (Plaintiff's Primary Care) and Arizona Arthritis and Rheumatology. AR 646. Dr. Hendricks found that Plaintiff had knee pain with limited range of motion ("ROM") on flexion to 90 degrees. AR 646. She also determined Plaintiff had limited ROM in her shoulder and that Plaintiff's upper back pain limited her ability to use her arms. AR 646. Dr. Hendricks determined Plaintiff could stand and/or walk for less than two hours in an 8-hour workday, that Plaintiff could not sit for 6-hours over an 8-hour

workday, and that Plaintiff had limited ability to push and pull with her upper extremities. AR 647, 651. Dr. Hendricks also opined Plaintiff would be off task 25% of the time and would miss twelve to fourteen days of work per month due to her medical conditions. AR 651.

### i. Dr. Hendricks' Opinion is Inconsistent with Plaintiff's Medical Record

The ALJ discounted Dr. Hendricks' determination that Plaintiff has limited range of motion of the knees and difficulty standing because these limitations were not observed elsewhere in the record. AR 23. Plaintiff argues this is not "a reasonable basis to reject [Dr. Hendricks'] findings." Doc 18 at 7.

When evaluating medical opinions, ALJs must consider the opinion's consistency with other record evidence. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

Here, the ALJ found Dr. Hendricks' opinion inconsistent with the objective record evidence. AR 24. In the relevant time period, Plaintiff's medical records document normal gait, strength, and range of motion. AR 362, 472, 496-7, 542-47, 555, 560, 569, 574, 587, 592-93, 598, 606, 614, 624-25. This stands in stark contrast to Dr. Hendricks' finding that Plaintiff had difficulty changing positions and walking. AR 646. The Court finds no error in the ALJ's discounting of Dr. Hendricks' opinion on these issues.

### ii. The ALJ Reasonably Concluded Dr. Hendricks' RFC Report Was Not Well Supported

The ALJ determined Dr. Hendricks' medical assessment was not supported by citations to the medical evidence in the record or by a long-standing treatment relationship with the Plaintiff. AR 23. The ALJ found "the limitations opined by Dr. Hendricks were based on a single examination of the claimant (which was not found in the medical evidence of record) and were not based on a longitudinal treatment history." AR 23.

Despite Plaintiff's contentions to the contrary (doc. 18 at 6), the fact that the state agency physicians did not examine Plaintiff is not significant because an ALJ may consider the nature of a physician's relationship to a claimant but is not required to assign any specific weight to a treating source versus a non-examining source. *See* 20 C.F.R. § 404.1520c(a)-(c). The ALJ reasonably concluded the state agency physicians were more familiar with Plaintiff's medical record than Dr. Hendricks because the state agency physicians cited multiple exam findings, records from G&K Medical Associates, and other records from 2018 and 2019. AR 67-91. Although Doctor Hendricks acknowledged Plaintiff's records from G&K Medical Associates and AZ Arthritis and Rheumatology, she made no specific citations to Plaintiff's medical records in her report. AR 646. In addition, Dr. Hendricks completed the Residual Functional Capacity questionnaire that includes references to the medical tests (such as Plaintiff's knee flexion was 90 degrees) but the actual examination is absent from the record. AR 646-51. This Court finds that the ALJ did not err in finding Dr. Hendricks' opinion unpersuasive due to its lack of support. AR 23.

The ALJ also found Dr. Hendricks' opinion unpersuasive because she limited Plaintiff to a sedentary exertion level "in the absence of negative musculoskeletal or neurological findings to support her conclusions." AR 23. The ALJ concluded Plaintiff's 90-degree knee flexion was "relatively normal." AR 23. Plaintiff asserts that the ALJ improperly made medical determinations and "speculated as to the type of symptoms and objective findings necessary to support a sedentary exaptational determination." Doc. 18 at 8. To the contrary, it is the ALJ's duty to interpret objective medical data to form the RFC. The SSA regulations mandate that the ALJ consider medical and other record evidence, resolve conflicts in the evidence, and craft an RFC to determine a claimant's disability status. 20 C.F.R. §§ 404.1520b(c), 404.1527(d)(2), 404.1546.

Plaintiff is correct that some of her impairments, particularly fibromyalgia, are not expected to cause musculoskeletal or neurological findings. But Dr. Hendricks did not opine as to the severity of Plaintiff's fibromyalgia, nor did she attribute any of Plaintiff's specific symptoms or limitations to this diagnosis. AR 646-51. The lack of evidence

(musculoskeletal, neurological, or otherwise) in Dr. Hendricks' report creates ambiguity as to Plaintiff's impairments. As the ALJ's conclusion represents a rational interpretation of the evidence, the Court will not disturb that finding. *See Thomas*, 278 F.3d at 954.

### iii. The ALJ's Reference to "Dr. Huddleston" is Harmless Error

In discussing Dr. Hendricks' report, the ALJ in one instance stated that the limitations opined by "Dr. Huddleston" were unsupported by the record. AR 23. Defendant notes that Dr. Huddleston is not a medical source in this case and suggests that the inclusion of this sentence is a harmless scrivener's error. Doc. 19 at 7-8. The Court agrees the error is harmless. The ALJ cited multiple reasons for finding Dr. Hendricks' opinion unpersuasive, and one ambiguous reference is inconsequential to the ultimate disability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## B. The ALJ Erred in Rejecting Plaintiff's Symptom Testimony in the Absence of Specific, Clear, and Convincing Reasons

An ALJ uses a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3D 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If the claimant has done so and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the testimony. *Id.* Specific, clear, and convincing evidence is "sufficiently specific to permit the [reviewing] court to conclude that the ALJ did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.3d 341, 345 (9th Cir. 1991) (en banc).

Plaintiff alleged disability due to lupus, COPD, fibromyalgia, anxiety, depression, osteoporosis, and Sjogren's syndrome. AR 19. Plaintiff testified that her mental health impairments affected her concentration, memory, and understanding and that she had difficulty completing tasks and getting along with others. AR 19. Plaintiff also testified that she spent approximately 80% of her day in bed due to pain, had difficulty completing chores, and suffered from fatigue. AR 46-48.

The ALJ found Plaintiff's testimony about the intensity, persistence or limiting effects of her symptoms was not credible because of (1) Plaintiff's reported daily activities and (2) lack of support in the objective medical evidence in the record. AR 24.

### i. Daily Activities

In making an adverse credibility finding, the ALJ may reasonably rely on a plaintiff's reports of daily activities which indicate capacities transferable to a work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Daily activities may also be grounds for discrediting a claimant's testimony in so far as they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

The ALJ found Plaintiff's symptom testimony unpersuasive because Plaintiff was "quite active at home." AR 24. The ALJ cites Plaintiff's ability to care for her cat, make meals, maintain personal care, shop, play with her grandchildren, visit with friends, and perform household chores such as laundry and cleaning. AR 24. Plaintiff asserts her daily activities do not undermine her testimony regarding her "very limited ability to sit, stand, lift, and need to lay down throughout the day." Doc 18 at 18. The Court agrees. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair*, 885 F.2d at 603. The question is not whether Plaintiff can participate in the activities of daily living *at all*, but whether these activities are "easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication," *id.*, or whether Plaintiff's activities contradict her claim of a disabling impairment, *Molina*, 674 F.3d at 1112-13.

Plaintiff testified that approximately 80% of her day is spent in bed. AR 46. She grocery shops every other week, but her spouse takes care of the remaining errands. AR 46, 47. Her ability to clean is limited by her pain and respiratory issues. AR 47. Her care of the cat is limited to once-daily feedings. AR 49. Post retirement, Plaintiff went to lunch with a friend one time. AR 48. Prior to her retirement, Plaintiff's fatigue led her to place a chair in the locker room to rest throughout the day. AR 42-43.

When reviewing an ALJ's decision, a Court must consider the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009. The Court finds that the ALJ's characterization of Plaintiff's daily activities omitted important context. When Plaintiff's daily activities are considered in conjunction with her frequent breaks and the assistance she receives from her spouse, the Court cannot say her activities contradict her symptom testimony. *See Riddick v. Chater*, 157 F.3d 715, 723 (9th Circ. 1998) (finding the ALJ erred in developing his evidentiary basis without "fully accounting for the context of materials or all parts of the testimony and reports"). The ALJ's conclusion that Plaintiff's daily activities contradict her testimony is lacking in the support of substantial evidence.

### ii. Lack of Support of Objective Medical Evidence

The ALJ also rejected Plaintiff's symptom testimony based on a lack of corroborating medical evidence. Standing alone, a lack of corroborating objective medical evidence is not a clear and convincing reason for rejecting a claimant's testimony. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). This is because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 CFR § 404.1529(c)(3). When medical evidence fails to corroborate a plaintiff's subjective complaints, the ALJ must consider (1) plaintiff's the daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatment, other than medications; (6) any other measures used to alleviate pain or other symptoms, (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) any other factors concerning functional limitations. *Id.*

The ALJ provided a six-page summary of Plaintiff's medical records but did not identify which aspects of Plaintiff's testimony the ALJ viewed as at odds with objective

medical evidence. AR 18-24. Although the ALJ is not required to perform a "line-by-line exegesis of the claimant's testimony" to meet the clear and convincing standard, *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020), the ALJ must specify what testimony the ALJ finds not credible, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ did not state that any particular part of Plaintiff's testimony was not credible and failed to explain how the medical evidence conflicted with her testimony. AR 19. The ALJ's credibility determination lacked the support of a clear, convincing reason supported by substantial evidence in the record.

The ALJ's credibility determination was not harmless error. Harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination" or when "despite the legal error, 'the agency's path may reasonably be discerned.'" *Tommasetti,* 533 F.3d at 1038. That is not the case here.

V.   **THE CREDIT-AS-TRUE-RULE**

When the ALJ erroneously denies benefits, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). In rare circumstances, the Court may remand for an immediate calculation of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). Plaintiff argues this Court should impose the credit-as-true rule and remand for a payment of benefits. That would be appropriate where an ALJ (1) failed to provide legally sufficient reasons for rejecting medical evidence, *id*. at 1100; (2) the record was fully developed with no outstanding issues, *id*. at 1101; and (3) the Court finds the relevant testimony credible as a matter of law and determines that "the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

It is inappropriate to invoke the credit-as-true rule when "additional proceedings can remedy defects in the original administrative proceeding." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quotation marks and citation omitted). It is also inappropriate to invoke the rule when there are ambiguities in the record. *Treichler*, 775 F.3d at 1100. As

the ALJ noted, Dr. Hendricks conducted a physical evaluation that is not in the record. However, the ALJ failed to develop the record by requesting this evaluation or ordering Plaintiff to attend a consultative examination of her physical impairments. Without such an evaluation, the extent of Plaintiff's physical limitations is unknown. The Court cannot say the record is without ambiguity and therefore declines to invoke the credit-as-true rule.

## VI. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision and remand for further proceedings.

**IT IS THEREFORE ORDERED** reversing the February 10, 2021, decision of the Administrative Law Judge (AR 13-25) as upheld by the Appeals Council on March 17, 2022 (AR 1). The Court remands this matter for further proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 21st day of April, 2023.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge